The opinion of the court was delivered by
Tilghman, C. J.
This was an ejectment for an island in the river Susquehanna, containing about six hundred and seventy-seven acres, with the usual allowance, situate near the mouth of the Juniata. The cause came to trial in the District Court for the county of Dauphin, when certain evidence being offered by *250 the plaintiff, it was objected to by the defendants, and rejected by the court; whereupon the counsel for the plaintiff took an exception, which is now the subject of consideration.
The evidence offered by the plaintiff, was the deposition of Robert Armstrong, taken under a rule of court, and to the following effect. [His Honour here stated the substance of the deposition.] This is the substance of Armstrong’s deposition, from which it remains doubtful, of whom, and how much Mr. Duncan purchased, and whether he received possession from the Malear family. Peter MtElear (the plaintiff,) is not mentioned in the deposition, so that it could not appear, without further evidence, how he stood related to Patrick MElear, deceased. The plaintiff also offered in evidence a warrant, dated the ISth of October^ 1760, to survey this, and other islands in the Susquehanna, for the use of the late proprietaries of Pennsylvania, and a survey in pursuance thereof, the 13th of November, 1760, which was returned, and accepted, in the office of the surveyor general, the 12th of July, 1763. When the counsel for the defendants objected to the plaintiff’s evidence, they produced and read to the court a number of papers, tending to show the custom of the land office, both in the time of the proprietaries, and since their estates became vested in the commonwealth;' from which they inferred, that islands were never granted on the common office terms, and were never subject to any right of pre-emption, to be acquired by improvement or settlement. The District Court was of opinion, that a right to an island in the Susquehanna, might be acquired by settlement and improvement in the year 1749. Nevertheless, they rejected the plaintiff’s evidence, on the ground of his being barred of his action by the act of limitation, (26th of March, 1785, sect. 5.) In this opinion, it was assumed, that the evidence of the-plaintiff showed no title except by improvement and settlement, without warrant or survey, for, if he had any other title, it is evident, that he was not barred by the 5th section of the act of limitation. The plaintiff took no exception to the opinion, that the right to an island might be acquired by improvement and settlement in the year 1749, because it was in his favour. It might be thought, that, under these circumstances, this court would be going out of their way., should they now express an opinion on that point. They therefore abstain from it, and desire it to be understood, that no inference, one way or the other, is to be drawn from their silence. Neither shall we give an opinion what the law would be, under . the act of limitation, (section 5,) if the evidence offered by the plaintiff disclosed no other title than by improvement and settlement, without warrant or survey; because that is not the case. It is to be remarked, that when the plaintiff offered his evidence, he did not say, either that it was for no other purpose than to prove a title by improvement and settlement, or that he intended to offer no other evidence. The defendants might have called on him to *251 declare the purpose for which the evidence was offered; but they did not. The question is, therefore, whether the evidence was not at least one step towards a title other than by improvement and settlement. We will suppose, merely for the sake of the argument, that Patrick Malear could legally acquire no title against the proprietaries by settlement, (which is stating the case as strongly as possible against the plaintiff,) it does not follow, that a possession of upwards of fifty.years, continued from father to son, was not evidence of title sufficient to recover against one who showed no title. Suppose the evidence had been given, with additional evidence connecting the plaintiff’s possession with that of Patrick M‘Elear, and the defendants had demurred to it; or suppose the defendants, without giving any evidence of their own, had gone before the jury on the evidence of the plaintiff, how would they have stood ? By the warrant and survey, this island had been separated from the general mass of property held by the proprietaries, and appropriated to their particular use. And being thus appropriated, it was excepted from the general proprietary estate, which was vested in the commonwealth by virtue of the act of the 27th of November, 1779, and remained the property of the proprietaries. There was, then, a period of thirty-nine years, between the return of the survey in 1763, and the entry of Mr. Duncan, when he received possession from Baskin in 1802, during the whole of which, possession had been held by Patrick M‘Elear, deceased, or those from whom he received possession, or those claiming under him. Although the deposition of Armstrong did not state that the plaintiff was of the family of Patrick M‘Elear, yet the plaintiff might have proved that fact by other evidence, especially as it appears by the bill of exceptions, that he claimed under'an uninterrupted possession from the first settler to himself. I have said, that Mr. Duncan received possession from Baskin, because it is expressly said so in Armstrong’s deposition. He may, perhaps, have received possession from some, or all, of the M‘Elear family also, but the deposition does not say so, and the court cannot infer it. It is a very material fact, which none but the jury could decide. Now, in a contest between the plaintiff and strangers, without title, (for so the defendants must be considered, having shown no tide except the possession received from William Baskin, which could not affect the plaintiff,) could the jury do otherwise than presume, that the plaintiff’s possession was by permission of the late proprietaries and their heirs; and, consequently, his title good against all b.ut them, or those who claimed lawfully under them? In Woods, &c. v. Lane, 2 Serg. & Rawle, 53, it was the opinion of this court, that a bare possession was good title against one who showed no title. The case would have been very different, if it had appeared, either that .the M'Elears had abandoned their possession, or given it up to Mr. Duncan, or that Mr. Duncan had acquired title from the late proprietaries. *252 A title thus acquired would have taken away all presumption of title in the plaintiff, by virtue of a license from the owners of the soil; and, as to a presumption of a grant in fee simple (as contended by the counsel for the plaintiff,) there was no ground for it, because such a presumption, when resting on time only, can never be raised, on less time than that prescribed by the act of limitation. But whatever the probability may be, of a conveyance from the proprietaries to Mr. Duncan, we see nothing of it on the record, and therefore cannot suppose that it exists. Our present duty' is confined to a determination, not whether the evidence offered proved a complete title, but whether it ought not to have been admitted. I am of opinion that it ought, and therefore the judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.